UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MM PROTON I, LLC., <br><br> Plaintiff, <br><br> v. <br><br> YORY LLC. and CYCLE THERAPY NYC INC., <br><br> Defendants. | No.  17-CV-10102 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR AN IMMEDIATE INJUNCTION**

Charles C. Platt
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
New York, NY 10007
Telephone:  (212) 230-8800
Fax:  (212) 230-8888
Email:  charles.platt@wilmerhale.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTS RELEVANT TO THIS MOTION ............................................................................. 3

    A.    The Proton Center Project ............................................................................................ 3

    B.    The Poor Condition Of The CT Building .................................................................... 4

    C.    The Plans To Connect The Buildings And the License Agreement ............................ 5

    D.    The Defendants' Unreasonable Delays ........................................................................ 7

    E.    The Harm Caused By Defendants' Unreasonable Delays ........................................... 8

ARGUMENT .......................................................................................................................... 10

    F.    Likelihood of Success ................................................................................................. 11

    G.    Balance of Hardships ................................................................................................. 12

    H.    Defendants' Conduct Is Causing The Actual and Imminent Risk of Irreparable Harm ........................................................................................................................... 12

    I.    The Public Interest Will Be Served By An Injunction .............................................. 13

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Broad Fin. Ctr. LLC v. Ass'n of Sec. Dealers Inc.*,
   187 F. Supp. 2d 139 (S.D.N.Y. 2002) ................................................................ 12

*C.D.S. Inc. v. Zetler*,
   691 F. App'x 33 (2d Cir. 2017) ......................................................................... 10

*Citigroup Global Mkts Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010) ................................................................................ 10

*Doninger v. Niehoff*,
   527 F.3d 41 (2d Cir. 2008) ................................................................................ 10

*Faively Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) .............................................................................. 10

*Fischer & Mandell, LLP v. Citibank, N.A.*,
   632 F.3d 793 (2d Cir. 2011) ............................................................................... 11

*Norfolk S. Ry. Co. v. City of Pittsburgh*,
   235 F. App'x 907 (3d Cir. 2007) ....................................................................... 12

*See Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*, No. 02 Civ. 9369 (DFE), 2003 WL 23641529, at *17 (S.D.N.Y. June 4, 2003), *amended in part,* No. 02 Civ. 9369 (DFE), 2003 WL 21697884 (S.D.N.Y. July 21, 2003), and *aff'd in part and remanded*, 369 F.3d 645 (2d Cir. 2004) ...................................................................................................... 10

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .............................................................................. 13

*Rodriguez ex rel. Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1999) .............................................................................. 10

*Sierra Club v. Hennessy*,
   695 F.2d 643 (2d Cir. 1982) .............................................................................. 10

*Standard & Poor's Corp, Inc. v. Commodity Exchange, Inc.*,
   683 F.2d 704 (2d Cir. 1982) .............................................................................. 13

*Thomassen v. J & K Diner, Inc.*,
   152 A.D.2d 421 (1989) ...................................................................................... 13

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 2737 (2d Cir. 1995) ............................................................................... 11

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7, 2 (2000) ................................................................................................. 10

*Zervos v. Verizon N.Y., Inc.*,
    277 F.3d 635 (2d Cir. 2002) .................................................................................... 13

**Statutes**

R.P.A.P.L § 881 ................................................................................................................ 14

**Other Authorities**

Fed. R. Civ. P. 65(a)(2) .................................................................................................... 10

New York City Administrative Code, Title 28, § ........................................................ 14

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR AN IMMEDIATE INJUNCTION

Plaintiff MM Proton I, LLC ("MM Proton or "Plaintiff") respectfully submits this memorandum of law in support of its motion for an immediate injunction.

### PRELIMINARY STATEMENT

MM Proton is constructing a much-needed proton therapy center in Manhattan that will provide a highly-specialized form of radiation therapy that is currently unavailable to critical care cancer patients. The proton center is being constructed pursuant to a New York State Health Department Certificate of Need, and in furtherance of the City of New York's revitalization efforts in East Harlem. There are very few proton centers in the United States; this will be the only center to serve all of New York State.

MM Proton's construction of this proton therapy center is being unreasonably and dramatically delayed by defendant Yory LLC ("Yory"), which owns a building that abuts the construction site, and by defendant Cycle Therapy NYC Inc. ("Cycle Therapy"), which leases Yory's building. (Yory and Cylce Therapy are collectively referred to as "Defendants.") Defendants have delayed this construction by (among other things) refusing to comply with their obligations under their License Agreement with MM Proton, in which they expressly agreed that MM Proton would have access to their building to perform certain "joist tie" work. Defendants caused this delay to extract compensation and other benefits from MM Proton far in excess of what defendants are already receiving in the License Agreement.

The delays caused by Defendants' misconduct have not only resulted in MM Proton suffering millions of dollars in additional expenses, and facing damages of $3 million a month beginning on May 1, 2018. The delays have also created the following actual and imminent risks of irreparable injury in the event that an injunction is not granted: MM Proton will be

prevented from completing the Project and obtaining a Certificate of Occupancy, and thereby lose control of its property to the EDC, and jeopardize the existence of a proton center in East Harlem; public health and safety will be seriously threatened in the event the joist tie work is not performed promptly; cancer patients will be deprived of necessary and critical treatment; New York State will be deprived of a proton center for which the New York State Department of Health has issued an exclusive Certificate of Need; MM Proton's business relationship with the Medical Centers will be seriously threatened, and causing permanent and incurable harm to MM Proton's owners; the national and international reputations of the members of the Medical Centers and of the City of New York as being at the leading edge of cancer care and research will be seriously weakened, including the risk of losing key, renowned cancer specialists to medical centers in other cities; and the revitalization of East Harlem that has been relying on the proton therapy center for economic expansion and prosperity will be seriously threatened.

MM Proton is likely to succeed on the merits of its claim that Defendants have breached their obligations under their License Agreement, and that defendants are required under the License Agreement to immediately permit Plaintiff and its contractors access to and use of Defendants' building to do the joist tie work without any further delay, and execute documents necessary to permit the joist work to be performed. The balance of hardships also tips decidedly toward MM Proton in this case, as the costs greatly outweigh the benefits of not granting the injunction.

Accordingly, Plaintiff respectfully requests that the Court enjoin the Defendants to perform immediately their obligations necessary for MM Proton to meet its deadline and achieve a Certificate of Occupancy for the project by May 1, 2018, including but not limited to the

Defendants' obligation to permit access to and use of their land and building, and to enjoin Yory to sign the easement required by the Department of Buildings.

## FACTS RELEVANT TO THIS MOTION[1]

Defendant Yory LLC ("Yory") owns the land, and a five-story building that is over 100 years old, located in East Harlem at 230 East 127th Street, New York, New York (the "Premises"). Defendant Cycle Therapy NYC Inc. ("Cycle Therapy") leases the Premises, and uses the building (the "CT building") to operate its business of selling, repairing, and storing motorcycles and selling related merchandise.

MM Proton owns a parcel of property adjacent to the Premises, known as block 1791, lot 1 on the New York County tax map (the "Project Site") between East 126th and 127th streets in East Harlem, that it purchased in July 2015.

### A.    The Proton Center Project

MM Proton is in the process of constructing a much-needed and innovative proton therapy center (the "Project" or the "proton center") on the Project Site.  When completed, MM Proton will lease the proton center to a consortium of leading New York City medical centers ("Medical Centers"), including Mount Sinai and Memorial Sloan Kettering.  Those medical centers in turn will use the proton center to provide currently unavailable critical care to cancer patients in the New York metropolitan area.

In 2010, the New York State Department of Health determined that "PBT [proton beam therapy] has demonstrated efficacy for a number of relatively rare cancers and tumors that are not amenable to surgery or conventional forms of radiation," and recognized "the size and cost of a

---

[1] These relevant facts are taken from the declaration of Robert Murphy dated January 11, 2018 that accompanies this motion.

proton beam therapy facility, and the necessary organization and management structure required to operate and finance such a facility."

The consortium of Medical Centers was organized and awarded a Certificate of Need issued by the Department of Health to develop and operate a proton center to treat patients and perform research into proton therapy. The Medical Centers in turn entered into a lease arrangement with MM Proton in which MM Proton would finance, build, and lease the proton facility to the consortium. The total project cost when complete will be close to $300,000,000. To date, the Medical Centers have spent more than 7 years, and more than $70,000,000, to develop the proton center.  When completed, this will be the only proton center to serve all of New York State.

MM Proton worked closely with New York City Economic Development Corporation ("EDC") to identify and secure vacant land in an area of East Harlem that the City had targeted for economic development and revitalization.  In addition to paying EDC the full $14,000,000 appraised value for the land, Plaintiff also paid EDC an additional $7,000,000 to be utilized by EDC at EDC's discretion.  MM Proton and the Medical Centers also committed to specific hiring, job creation, training, education and free health care goals to benefit the local East Harlem community.  If the proton center does not achieve a certificate of occupancy by July 15, 2018, then EDC has the right to re-enter and reacquire the Property, together with any improvements thereon, without paying Purchaser or any subsequent owner of the Property any consideration.

**B.     The Poor Condition Of The CT Building**

Prior to purchasing the site for the proton center and commencing construction, MM Proton engaged an independent engineering firm to enter and perform a comprehensive existing conditions survey detailing the condition of the entire CT building.  This survey evidenced that the CT building was more than 100 years old and in poor condition.  It had innumerable cracks and

leaks and other defects resulting from previous structural events and many years of neglect. Further, an engineer's survey indicated that the CT building had encroached onto the land MM Proton would purchase.

After commencement of MM Proton's construction, Plaintiff's contractors discovered that the five-story CT building was built upon a "rubble" foundation, a foundation system that encroached under MM Proton's site. The contractors also found that the CT building had a concrete structural buttress beside the rubble foundation that extended even further onto MM Proton's site. The concrete buttress is indicative of past issues regarding settlement of the CT building. All this encroachment required a redesign by MM Proton of the proton center's foundation system at significant cost and delay.

### C. The Plans To Connect The Buildings And the License Agreement

In December 2015, contractors working on the Project Site were drilling caissons for the proton center foundation. While that drilling was occurring, the geotechnical engineer recorded that some additional new settlement of the CT building had occurred.

Work on the Project stopped immediately, and MM Proton worked closely with Yory and Cycle Therapy and their engineers, Fennel Engineering, to design and agree to a plan, including the installation of certain protective measures, to stabilize the CT building. MM Proton spent the next eight months resequencing the Project and implementing the comprehensive and expensive plans to ensure that drilling and construction could occur at the Project Site without causing further harm to the CT building.

Defendants insisted that the new plans include joist ties, an extra form of structural bracing, that would be installed inside the CT building and connect the adjoining walls of the CT building and the new proton center. The seismic gap between the CT building and the new proton center would be eliminated. MM Proton's architects prepared revised plans, and

5

MM Proton applied for an amendment to its building permit, to accommodate these agreed-to measures.

Plaintiff has continued to build the proton center in accordance with these plans, which defendants explicitly approved and accepted. As a condition of issuing the permit covering these changes, the Department of Buildings has required that Yory execute a one-page easement document in which MM Proton is Grantor and Yory is Grantee, and which allows Yory's CT building to encroach on MM Proton's property. The agreed-to construction plans, including installation of the joist ties and adjacent support demanded by Yory, cannot be completed without the permit or easement. In spite of the fact that these changes were insisted upon by Yory, Yory has failed and refused to sign the easement document.

Yory applied for and was granted a building permit to perform the elements of the agreed-to joist tie work that occur within its own building to connect Yory's building to MM Proton's building. But Yory has not cooperated to allow MM Proton to obtain the building permit it needs to complete the agreed-to work that occurs within Plaintiff's building. Yory knows that MM Proton has already committed significant time and expense to this work, and that Plaintiff will not be able to obtain a Certificate of Occupancy for the $300,000,000 Project without a building permit for the work to be completed in accordance with the agreed-to plans.

MM Proton has incurred many millions of dollars of additional costs to redesign the Project and to implement the plans agreed to by the parties. Plaintiff has also paid defendants for a long list of alleged damages that they claimed to have incurred. Payments to defendants have totaled more than $500,000 to date.

MM Proton entered into a License Agreement (the "Agreement") dated as of August 25, 2016 with Cycle Therapy and Yory with respect to the Premises that memorializes the parties' agreement regarding the revised Project plans. The Agreement provides (among other things) that

6

joist ties work be performed in the CT building, as described above. MM Proton expects that the work required to be performed will take at least 3-4 months to complete.

### D. The Defendants' Unreasonable Delays

Plaintiff has performed on its obligations under the Agreement. However, Yory and Cycle Therapy have failed to perform on their obligations, including but not limited to permitting the joist tie work to be performed and cooperating with MM Proton and acknowledging the new easement document required by the Department of Buildings to allow Plaintiff to obtain the permit to complete the agreed-to Project plans.

In particular, MM Proton has submitted work plans, delivered materials to the site, and had contractors committed on three separate occasions to mobilize to perform the joist tie work. In each instance, Plaintiff has given Defendants more than adequate advance notice, and time and resources to permit the work in a way that would not be unduly disruptive to the Premises or their business. MM Proton has even paid monies to Cycle Therapy, and Cycle Therapy has accepted such monies, for Cycle Therapy to move and store Cycle Therapy's materials so that the joist tie work could be performed. In response to Plaintiff's requests, Defendants have thrown up one roadblock after another, demanding additional payments in advance, claiming that the timing was inconvenient, or making other unreasonable demands or excuses.

Most recently, MM Proton presented a work plan and a contract to have Defendants' own contractor, Fennell Engineering, perform the joist tie work. The work would be performed during the winter, not during what Cycle Therapy has claimed in the past to be its busy summer season. MM Proton has guaranteed payment to Fennell Engineering in accordance with a price and a payment schedule agreed to by Fennell Engineering. MM Proton and Fennell coordinated the creation of Fennell's contract with Cycle Therapy's attorney.

On October 23, 2017, Cycle Therapy's attorney wrote that Fennell is ready to proceed. Fennell Engineering confirmed to Plaintiff on December 12, 2017 that Fennell Engineering is prepared to move forward immediately with the work once Fennell's agreement is signed. Nevertheless, despite repeated requests by MM Proton since October, Fennell's contract has not been signed by Yory or Cycle Therapy, who are preventing the work from proceeding.

Defendants' continued and extended failures to cooperate and to permit the joist tie work to be performed, in furtherance of the License Agreement, are an apparent attempt to misappropriate money from Plaintiff, and enrich Defendants at MM Proton's expense, by improperly using their leverage over work that must be performed to complete its Project.

At the same time that Defendants have been refusing to cooperate with respect to the joist tie work, Yory and Cycle Therapy have been demanding payment from MM Proton for additional damages beyond those already paid, and beyond those specified in the License Agreement, amounts that are far in excess of those that Defendants have actually suffered. Indeed, Yory and Cycle Therapy have repeatedly demanded payment from Plaintiff for numerous building defects that pre-date MM Proton's purchase of the proton center site.

### E. The Harm Caused By Defendants' Unreasonable Delays

In short, Defendants participated in the creation of the plan to join the two buildings and insisted on the installation of the joist ties, but then used that requirement as leverage to improperly prevent MM Proton from completing its Project until Defendants had extracted further payments from Plaintiff.

Yory and Cycle Therapy's failure to comply with the obligations in the Agreement, and their effort to extract money from MM Proton, has created significant delays for MM Proton in its construction on the abutting site of a much-needed proton center for patients with cancer. Those delays, and other Yory and Cycle Therapy actions, are seriously threatening

8

MM Proton ability to complete the Project, and obtain a Certificate of Occupancy. In the event the required work does not begin immediately, it is likely that MM Proton will not meet the deadline of May 1, 2018 to obtain the Certificate of Occupancy, and it will begin incurring costs of $3 million per month. In addition, in the event the delays continue after May 1, and the required work is not performed, the following irreparable injury will occur that cannot be compensated by money damages:

    a. MM Proton faces the actual and imminent risk that it will lose control of its property to the EDC, and the existence of a proton center in East Harlem will be seriously jeopardized

    b. There is an actual and imminent risk to public health and safety in the event the joist tie work is not performed promptly;

    c. Cancer patients will be deprived of necessary and critical treatment;

    d. New York State will be deprived of a proton center for which the New York State Department of Health has issued an exclusive Certificate of Need;

    e. MM Proton's business relationship with the Medical Centers will be seriously threatened, and causing permanent and incurable harm to MM Proton's owners;

    f. The national and international reputations of the members of the Medical Centers and of the City of New York as being at the leading edge of cancer care and research will be seriously weakened, including the risk of losing key, renowned cancer specialists to medical centers in other cities; and

    g. The revitalization of East Harlem that has been relying on the proton therapy center for economic expansion and prosperity will be seriously threatened.

## ARGUMENT

Plaintiff MM Proton moves for a preliminary injunction with permanent injunctive relief. *See Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*, No. 02 Civ. 9369 (DFE), 2003 WL 23641529, at *17 (S.D.N.Y. June 4, 2003), *amended in part,* No. 02 Civ. 9369 (DFE), 2003 WL 21697884 (S.D.N.Y. July 21, 2003), and *aff'd in part and remanded*, 369 F.3d 645 (2d Cir. 2004) ("Rule 65(a)(2) of the Federal Rules of Civil Procedure expressly permits the Court to order consolidation of trial on the merits with a hearing on an application for a preliminary injunction before or after the commencement of a hearing on an application.") (internal quotation marks and alterations omitted); *Sierra Club v. Hennessy,* 695 F.2d 643, 647 (2d Cir. 1982) ("The equitable principles and scope of review [for preliminary relief and permanent injunction] remain the same"); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 n.9 (2d Cir. 1999) ("Although a showing of 'irreparable harm' is required for the imposition of any injunctive relief, preliminary or permanent, the 'imminent' aspect of the harm is not crucial to granting a permanent injunction.") (internal citation omitted).

To obtain the injunctive relief it seeks, MM Proton must show that (a) likelihood of success on the merits, or sufficiently serious questions on the merits and a balance of hardships tipping decidedly toward MM Proton, and (b) irreparable harm. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 33 (2d Cir. 2010); *Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir. 2008). MM Proton must also establish that an injunction is in the public interest. *C.D.S. Inc. v. Zetler*, 691 F. App'x 33, 35 (2d Cir. 2017), citing *N.Y. Progress and Prot. PAC v. Walsh,* 733 F.3d 483, 486 (2d Cir. 2013).

The irreparable injury must be "actual and imminent," *Faively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009), is "*likely* in the absence of an injunction," *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original), and is

10

harm that cannot adequately be compensated with money damages.' *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

The facts show that MM Proton has met each of these elements.

### F.     Likelihood of Success

MM Proton is likely to succeed on the merits of its breach of contract claim because the License Agreement requires the Defendants to provide access to and use of the CT building to allow MM Proton to perform the joist tie work, and the joist tie work can be performed only if the Yory executes the DOB-required easement. The Defendants themselves insisted that this work be performed, and even referred to it specifically in the License Agreement as work that MM Proton was to perform. MM Proton has fully performed all of the preconditions to performing this work under the License Agreement. Plaintiff has even agreed to use Yory's and Cycle Therapy's own contractor, Fennell Engineering, to perform the joist tie work, has guaranteed payment to Fennell Engineering in accordance with a price and a payment schedule they demanded, and agreed to have the work performed on a schedule most advantageous to Cycle Therapy.

Instead of living up to their obligations under the License Agreement, defendants have refused to let the joist work be performed and have failed to sign the easement. The Defendants have tried to extract more and more concessions and money from MM Proton before complying with their contractual obligations, in an effort to further enrich themselves at MM Proton's expense. That is a clear and substantial proof of an intentional breach of the License Agreement. *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages).

### G. Balance of Hardships

Defendants have not only breached the License Agreement, they have acted in a manner that shows the balance of hardships tips decidedly in favor of MM Proton. Defendants have not offered any legitimate reason why access to perform the joist work should not be performed after all this time. By contrast, MM Proton is being taken advantage of, and its proton center is at risk of not being completed by the upcoming deadlines, at which time MM Proton will begin incurring damages of $3 million per month and thereafter confront the actual and imminent risk of losing the Project.

### H. Defendants' Conduct Is Causing The Actual and Imminent Risk of Irreparable Harm

The Defendants' unreasonable delays have also created actual and imminent risk of irreparable injury in the event an injunction is not granted. MM Proton will be prevented from completing the proton center, and obtaining a Certificate of Occupancy, by the rapidly-approaching deadline on May 1, 2018, and will thereby risk losing control of its property by mid-July and jeopardize the very existence of the Project. *See Broad Fin. Ctr. LLC v. Nat'l Ass'n of Sec. Dealers, Inc.*, 187 F. Supp. 2d 139, 141 (S.D.N.Y. 2002) (Injunctive relief is appropriate to protect an interest in a particular parcel of property because property is understood to be unique, and the loss of that particular property is not fully compensable by money damages).

Defendants' failure to comply with their contractual obligations is creating an actual and imminent risk to the public health and safety. By Defendants' own admission, the stability and security of their building is at risk. Despite MM Proton's numerous attempts to perform the protective work, at no cost to Defendants, Defendants have steadfastly refused to allow the building to be stabilized. The continuing fragility of the building poses a threat to public safety and surrounding property, thus an injunction must be issued to secure the

building as quickly as possible. *See Norfolk S. Ry. Co. v. City of Pittsburgh,* 235 F. App'x 907, 910 (3d Cir. 2007) (When a landowner refuses to take action to abate an unsafe condition on its property, the landowner creates a threat of injury to people and property that cannot be fully remedied by monetary damages); *Thomassen v. J & K Diner, Inc.,* 152 A.D.2d 421, 427 (1989) (Under New York Law, defendants have a duty to maintain the property in safe condition, even if the dangerous defect was created by an independent contractor during construction).

Defendants' breach of contract is also causing irreparable harm to cancer patients in New York who will use the proton center. *See Zervos v. Verizon N.Y., Inc.,* 277 F.3d 635, 646 (2d Cir. 2002) (holding that a delay in access to particular cancer treatment could have irreparable consequences). Those patients are in need of critical care, and are being deprived of a much-needed proton therapy center, and the highly specialized form of radiation therapy that is uniquely capable of treating tumor masses in sensitive areas of the body, such as the brain, neck, eyes, heart, and spine, without causing collateral damage to surrounding tissues. Every day that MM Proton's completion of the proton center is delayed, patients in New York are not only unable to access this less damaging therapy in New York. They are at risk of having alternative forms of therapy that are more damaging.

If MM Proton is not able to complete the proton center project in a timely manner as a result of Defendants' delays, MM Proton will suffer irreparable harm to its reputation and lose both good will from its hospital partners in the project and future business opportunities. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). This harm will be devastating to MM Proton but impossible to quantify, and therefore not compensable through money damages.

**I.     The Public Interest Will Be Served By An Injunction**

The court "may go much further" to grant injunctive relief when that remedy is "in furtherance of the public interest." *Standard & Poor's Corp, Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704, 711 (2d Cir. 1982). The public interest will be furthered by an injunction here because the Project is designed to revitalize the East Harlem community and completion of the Project is necessary to achieve that objective. Moreover, there is a strong public interest in providing additional and beneficial facilities for improved cancer treatments in New York. Indeed, New York State recognized the public interest in opening a proton therapy center when it issued a Certificate of Need. There is an actual and imminent risk that the public will be deprived of this proton center in the event that Defendants' unreasonable delays continue. Similarly, the public has an interest in preserving the national and international reputations of the members of the Medical Centers, and of the City of New York, as being at the leading edge of cancer care and research. That reputation will be seriously weakened, and there is a risk of losing key, renowned cancer specialists to medical centers in other cities, if Defendants' unreasonable delays derail the Project.

Finally, the public interest will be served by an injunction because there is no legitimate interest in permitting abutting landowners and tenants to breach their license agreements, and extract excessive payments, and thereby cause undue delays in large construction projects in New York. In fact, the opposite is true: New York recognizes that development is in the public interest, which is why an adjoining landowner can be compelled to grant a license to developers to make improvements to their property. *See* New York R.P.A.P.L § 881; *See also* New York City Administrative Code, Title 28, § BC 3309.2 (when an adjoining property must be protected from damage during construction work, the responsibility of affording any license to enter the adjoining property shall rest upon the owner of the adjoining property involved).

## CONCLUSION

Plaintiff MM Proton respectfully requests that the Court enjoin the Defendants to perform immediately their obligations necessary for MM Proton to meet its deadline and achieve a Certificate of Occupancy for the Project by May 1, 2018, including but not limited to the Defendants' obligation to permit access to and use of their land and building, and to enjoin Yory to sign the easement required by the Department of Buildings.

Dated: January 12, 2018

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

Charles C. Platt 2937
7 World Trade Center
New York, NY 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
Email: charles.platt@wilmerhale.com

*Attorney for plaintiff MM Proton I, LLC*