UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MM PROTON I, LLC.,

　　Plaintiff,

v.

YORY LLC. and CYCLE THERAPY NYC INC.,

　　Defendants.

No. 17-cv-10102

**DECLARATION OF ROBERT MURPHY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Robert Murphy affirms that the following is true under penalties of perjury:

1. I am Manager at plaintiff MM Proton I, LLC ("MM Proton"). I have personal knowledge of the facts stated in this declaration, and am competent to testify regarding these facts at trial.

### A. The Proton Center Project

1. Defendant Yory owns the land, and a building more than 100 years old, located in East Harlem at 230 East 127th Street, New York, New York (the "Premises"). Defendant Cycle Therapy leases the Premises, and uses the five-story building (the "CT building") to operate its business of selling, repairing, and storing motorcycles and selling related merchandise.

2. MM Proton owns a parcel of property adjacent to the Premises, known as block 1791, lot 1 on the New York County tax map (the "Project Site") between East 126th and 127th streets of East Harlem that it purchased in July 2015. Plaintiff is in the process of constructing a much-needed and innovative proton therapy center (the "Project" or the "proton center") on the Project Site.

3. When completed, MM Proton will lease the proton center to a consortium of leading not-for-profit New York City medical centers ("Medical Centers"), including Mount Sinai and Memorial Sloan Kettering. Those Medical Centers will in turn use the proton center to provide currently unavailable critical care to cancer patients in the New York metropolitan area.

4. In 2010, the New York State Department of Health determined that "PBT [proton beam therapy] has demonstrated efficacy for a number of relatively rare cancers and tumors that are not amenable to surgery or conventional forms of radiation," and recognized "the size and cost of a proton beam therapy facility, and the necessary organization and management structure required to operate and finance such a facility."

5. The consortium of Medical Centers was organized and awarded a Certificate of Need issued by the Department of Health to develop and operate a proton center to treat patients and perform research into proton therapy. The Medical Centers in turn entered into a lease arrangement with MM Proton in which MM Proton would finance, build, and lease the proton facility to the consortium. The total project cost when complete will be close to $300,000,000. To date, the Medical Centers have spent more than 7 years, and more than $70,000,000, to develop the proton center. When completed, this will be the only proton therapy center to serve all of New York State.

6. MM Proton worked closely with New York City Economic Development Corporation ("EDC") to identify and secure vacant land in an area of East Harlem that the City had targeted for economic development and revitalization. In addition to paying EDC the full $14,000,000 appraised value for the land, Plaintiff also paid EDC an additional $7,000,000 to be utilized by EDC at EDC's discretion. MM Proton and the Medical Centers also committed to specific hiring, job creation, training, education and free health care goals to benefit the local East

2

Harlem community. If the proton center does not achieve a certificate of occupancy by July 15, 2018, then EDC has the right to re-enter and reacquire the Property, together with any improvements thereon, without paying Purchaser or any subsequent owner of the Property any consideration.

**B.     The Poor Condition Of The CT Building**

7.     Prior to purchasing the site for the proton center and commencing construction, MM Proton engaged an independent engineering firm to enter and perform a comprehensive existing conditions survey detailing the condition of the entire CT building.

8.     This survey evidenced that the CT building was more than 100 years old and in poor condition. It had innumerable cracks and leaks and other defects resulting from previous structural events and many years of neglect. Further, an engineer's survey indicated that the CT building had encroached onto the land MM Proton would purchase.

9.     After commencement of MM Proton's construction, Plaintiff's contractors discovered that the five-story CT building was built upon a "rubble" foundation, a foundation system that encroached under MM Proton's site. The contractors also found that the CT building had a concrete structural buttress beside the rubble foundation that extended even further onto MM Proton's site. The concrete buttress is indicative of past issues regarding settlement of the CT building. All this encroachment required a redesign by Plaintiff of its own foundation system at significant cost and delay.

### C. The Plans To Connect The Buildings

10. In December 2015, contractors working on the Project Site were drilling caissons for the proton center foundation. While that drilling was occurring, the geotechnical engineer recorded that some additional new settlement of the CT building had occurred.

11. Work on the Project stopped immediately, and MM Proton worked closely with Yory and Cycle Therapy and their engineers, Fennel Engineering, to design and agree to construction plans, including the installation of certain protective measures, to stabilize and make safe the CT building.

12. Plaintiff spent the next eight months resequencing the Project and implementing the comprehensive and expensive plans to ensure that drilling and construction could occur at the Project Site without causing further changes to the CT building.

13. Defendants insisted that the new plans include joist ties, an extra form of structural bracing, that would be installed inside the CT building and connect the adjoining walls of the CT building and the new proton center. The seismic gap between the CT building and the new proton center would be eliminated. MM Proton's architects prepared revised plans, and MM Proton applied for an amendment to its building permit, to accommodate these agreed-to measures.

14. Plaintiff has continued to build the proton center in accordance with these plans, which defendants explicitly approved and accepted. As a condition of issuing the permit covering these changes, the Department of Buildings has required that Yory execute a one-page easement document in which MM Proton is Grantor and Yory is Grantee, and which allows Yory's CT building to encroach on MM Proton's property. The agreed-to construction plans,

4

including installation of the joist ties and adjacent support demanded by Yory, cannot be completed without the easement. In spite of the fact that these changes were insisted upon by Yory, Yory has failed and refused to sign the easement document.

15.     Yory applied for and was granted a building permit to perform the elements of the agreed-to joist tie work that occur within its own building to connect Yory's building to MM Proton's building. But Yory has not cooperated to allow MM Proton to obtain the building permit it needs to complete the agreed-to work that occurs within MM Proton's building. Yory knows that MM Proton has already committed significant time and expense to this work, and that MM Proton will not be able to obtain a Certificate of Occupancy for the $300,000,000 Project without a building permit for the work to be completed in accordance with the agreed-to plans.

16.     MM Proton has incurred many millions of dollars of additional costs to redesign the Project and to implement the plans agreed to by the parties.  Plaintiff has also paid defendants for a long list of alleged damages that they claimed to have incurred.  Payments to defendants have totaled more than $500,000 to date.

**D.     The License Agreement**

17.     MM Proton entered into a License Agreement (the "Agreement") dated as of August 25, 2016 with Cycle Therapy and Yory with respect to the Premises that memorializes the parties' agreement regarding, and acceptance and approval of, the revised Project plans.  The Agreement provides (among other things) that joist ties work be performed in the CT building, as described above.   MM Proton expects that the work required to be performed will take at least 3-4 months to complete.

18.     Plaintiff has performed on its obligations under the Agreement. However, Yory and Cycle Therapy have failed to perform on their obligations, including but not limited to permitting the joist tie work to be performed and cooperating with MM Proton and acknowledging the new easement document required by the Department of Buildings to allow Plaintiff to obtain the permit to complete the agreed-to Project plans.

**E.     The Defendants' Unreasonable Delays**

19.     In particular, MM Proton has submitted work plans, delivered materials to the site, and had contractors committed on three separate occasions to mobilize to perform the joist tie work. In each instance, Plaintiff has given Yory and Cycle Therapy more than adequate advance notice, and time and resources to permit the work in a way that would not be unduly disruptive to the Premises or their business. MM Proton has even paid monies to Cycle Therapy, and Cycle Therapy has accepted such monies, for Cycle Therapy to move and store Cycle Therapy's materials so that the joist tie work could be performed.

20.     In response to Plaintiff's requests, Yory and Cycle Therapy have thrown up one roadblock after another, demanding additional payments in advance, claiming that the timing was inconvenient, or making other unreasonable demands or excuses.

21.     Most recently, MM Proton presented a work plan and a contract to have Yory's and Cycle Therapy's own contractor, Fennell Engineering, perform the joist tie work. The work would be performed during the winter, not during what Cycle Therapy has claimed in the past to be its busy summer season. MM Proton has guaranteed payment to Fennell Engineering in accordance with a price and a payment schedule agreed to by Fennell Engineering. MM Proton and Fennell coordinated the creation of Fennell's contract with Cycle Therapy's attorney.

22.     On October 23, 2017, Cycle Therapy's attorney wrote that Fennell is ready to proceed. Fennell Engineering confirmed to Plaintiff on December 12, 2017 that Fennell Engineering is prepared to move forward immediately with the work once Fennell's agreement is signed. Nevertheless, despite repeated requests by MM Proton since October, Fennell's contract has not been signed by Yory or Cycle Therapy, who are preventing the work from proceeding.

23.     Defendants' continued and extended failures to cooperate and to permit the joist tie work to be performed, in furtherance of the License Agreement, are an apparent attempt to misappropriate money from Plaintiff, and enrich defendants at MM Proton's expense, by improperly using their leverage over work that must be performed for MM Proton to complete its Project.

24.     At the same time that Yory and Cycle Therapy have been refusing to cooperate with respect to the joist tie work, Yory and Cycle Therapy have been demanding payment from MM Proton for additional damages beyond those already paid, and beyond those specified in the License Agreement, amounts that are far in excess of those that defendants have actually suffered. Indeed, Yory and Cycle Therapy have repeatedly demanded payment from Plaintiff for numerous building defects that pre-date MM Proton's purchase of the proton center site.

**F.     The Harm Caused By Defendants' Delays**

25.     In short, Yory and Cycle Therapy participated in the creation of the plan to join the two buildings and insisted on the installation of the joist ties, but then has been using that requirement as leverage to improperly prevent MM Proton from completing its Project until defendants had extracted further payments from Plaintiff.

26. Yory and Cycle Therapy's failure to comply with the obligations in the Agreement, and their effort to extract money from MM Proton, has created significant delays for MM Proton in its construction on the abutting site of a much-needed proton center for patients with cancer. Those delays, and other Yory and Cycle Therapy actions, are seriously threatening MM Proton's ability to complete the Project, and obtain a Certificate of Occupancy. In the event that the required work does not begin immediately, it is likely that MM Proton will not meet the deadline of May 1, 2018 to obtain the Certificate of Occupancy, and it will begin incurring costs of $3 million per month. In addition, in the event the delays continue after May 1, and the required work is not performed, the following harm will occur that cannot be compensated by money damages:

a. MM Proton faces the actual and imminent risk that it will lose control of its property to the EDC, and the existence of a proton center in East Harlem will be seriously jeopardized

b. There is an actual and imminent risk to public health and safety in the event the joist tie work is not performed promptly;

b. Cancer patients will be deprived of necessary and critical treatment that is otherwise not available in New York;

c. New York State will be deprived of a proton center for which the New York State Department of Health has issued an exclusive Certificate of Need;

e. MM Proton's business relationship with the Medical Centers will be seriously threatened, and causing permanent and incurable harm to MM Proton's owners;

f.  The national and international reputations of the members of the Medical Centers and of the City of New York as being at the leading edge of cancer care and research will be seriously weakened, including the risk of losing key, renowned cancer specialists to medical centers in other cities; and

g.  The revitalization of East Harlem that has been relying on the proton therapy center for economic expansion and prosperity will be seriously threatened.

Dated: January 11, 2018

_____
Robert Murphy