## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

MM PROTON I, LLC.,

      Plaintiff,

      v.

YORY LLC. and CYCLE THERAPY NYC INC.,

      Defendants.

No.  17-CV-10102

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR AN IMMEDIATE INJUNCTION

Charles C. Platt
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
New York, NY 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
Email:  charles.platt@wilmerhale.com

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................1

ARGUMENT ...............................................................................................2

A.   The Access And Easement Being Sought Are Frequently Granted .......................2

B.   MM Proton Has Shown Likelihood Of Success On The Merits ...........................3

  1.   Defendants' Obligation To Permit Access Is Not Conditional...................4

  2.   Defendants Allegations Are Rebutted By Their Own Communications ........................................................................5

  3.   Defendants Breached The License Agreement...........................................6

  4.   There Is No Need For Discovery Or Resolution Of Fact Disputes ............7

C.   MM Proton Has Shown Irreparable Harm...............................................................7

D.   The Public Interest Will Be Served By An Injunction .........................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*2225 46th St., LLC. v. Hahralampopoulos*, 46 N.Y.S.3d 772 (Sup. 2017) ........................3

*Chase Manhattan Bank (Nat'l Ass'n) v. Broadway, Whitney Co.*, 294
    N.Y.S.2d 416 (Sup. Ct. 1968), *aff'd*, 24 N.Y.2d 927 (1969)...................................3

*Digital Sin, Inc. v. Does 1-179*, No. 11 Civ. 8172 (PAE), 2012 WL
    8282825 (S.D.N.Y. Feb. 1, 2012) ...........................................................................7

*Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342 (S.D.N.Y. 2013) ......................4

*Friedman v. Burns*, 55 Misc. 3d 757 (N.Y. Sup. Ct. 2017)..................................................5

*John E. Andrus Mem'l, Inc. v. Daines*, 600 F. Supp. 2d 563 (S.D.N.Y.
    2009) ........................................................................................................................8

*Kass v. Kass*, (N.Y. App. Div. 1997), *aff'd,* 91 N.Y.2d 554 (1998)...................................4

*N. 7-8 Inv'rs, LLC v. Newgarden*, 43 Misc. 3d 623 (N.Y. Sup. Ct. 2014) ........................3

*N. Atl. Operating Co. v. Evergreen Distribs., LLC*, 293 F.R.D. 363
    (E.D.N.Y. 2013)......................................................................................................7

*Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907 (3d Cir. 2007).......................9

*Queens Coll. Special Projects Fund, Inc. v. Newman*, 154 A.D.3d 943
    (N.Y. App. Div. 2017) ...........................................................................................3

*Remodeling Constr. Servs. v. Minter*, 78 A.D.3d 1677 (N.Y. App. Div.
    2010) ........................................................................................................................5

*Standard & Poor's Corp. v. Commodity Exchange, Inc.,* 683 F.2d 704 (2d
    Cir. 1982) ..............................................................................................................10

*Tyndall v. Tyndall*, 144 A.D.3d 1015 (N.Y. App. Div. 2016) ............................................5

*W. Ala. Women's Ctr. v. Williamson*, 120 F. Supp. 3d 1296, 1317–19
    (M.D. Ala. 2015).....................................................................................................8

*Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635 (2d Cir. 2002) .................................................7

## STATUTES, RULES, AND REGULATIONS

New York City Administrative Code, tit. 28, § BC 3309.2..................................................2

N.Y. Real Prop. Acts. Law § 881 (McKinney)....................................................................2

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR AN IMMEDIATE INJUNCTION

Plaintiff MM Proton I, LLC ("MM Proton or "Plaintiff") respectfully submits this reply memorandum of law in support of its motion for an immediate injunction, and in response to the Memorandum of Law In Opposition To Plaintiff's Motion For An Immediate Injunction ("Opp. Mem.") of defendants Yory LLC ("Yory") and Cycle Therapy NYC Inc. ("Cycle Therapy") (collectively, "defendants").

## PRELIMINARY STATEMENT

Defendants do not dispute that MM Proton is constructing a much-needed proton therapy center for critical care cancer patients that has also been acclaimed as a critical part of revitalization efforts in East Harlem.

Nor do defendants dispute that they have refused MM Proton access to their building necessary to perform "joist tie" work and the easement, even though their License Agreement mandates that access, and that work will provide "protective measures" for their building that has "shifted" and is still "leaning over several degrees."

Instead, defendants argue that MM Proton owes them an unspecified amount of money for damages to their building, and suggest that they are entitled to hold up the proton center project until all of that money is paid. However, nothing in the License Agreement permits defendants to impose such pre-conditions on the mandated joist tie work. That is an obligation separate from what money is due, and requires an injunction.

Even though MM Proton's right to access is not conditioned on payment of defendants' separate claims for damages, MM Proton has always been ready to pay defendants for their legitimate claims. MM Proton has already paid more than $500,000, and has repeatedly asked for an itemized list of the remaining damages, and backup

1

documentation, so that MM Proton can write a check for the entire amount. MM Proton has prepared for the Court such an itemized list, so that immediate resolution can occur.

Finally, defendants claim that the consequences of the delays of this critical care center in East Harlem are "speculative," even though the benefits that will be lost are documented by the Economic Development Corporation ("EDC") and by the accompanying declaration from the operator of the proton therapy center.  Defendants argue that there is no risk to public health and safety, even though their own engineer says the joist tie work is required and is designed to protect their building that is leaning several degrees. And they argue MM Proton has an opportunity to "cure" any loss of its property, even though that opportunity is meaningless if MM Proton is subject to delay costs of $3 million per month beginning in May.

All these actual and imminent risks of irreparable harm require an injunction immediately. Time is of the essence, and the Court's assistance is desperately needed.

## ARGUMENT

### A.  The Access And Easement Being Sought Are Frequently Granted

Defendants argue that the injunctive relief being sought here is extraordinary, and imposes a particularly high burden.  Opp. Mem. at 2-3. But Section 881 of the New York Real Property Actions and Proceedings Law mandates that such access to an adjoining property during construction "shall be" permitted upon the appropriate terms.[1] *See also* New York City Administrative Code tit. 28, § BC 3309.2 (the owner of the adjoining property has the responsibility to afford a license in some cases). That access is

---

[1] N.Y. Real Prop. Acts. Law § 881 (McKinney) provides: "When …improvements or repairs cannot be made by the owner ... without entering the premises of an adjoining owner …, and permission so to enter has been refused, the owner…may commence a special proceeding for a license so to enter…. Such license shall be granted by the court in an appropriate case upon such terms as justice requires…."

frequently permitted to ensure the stability of an adjoining building, and thus preserve public health and safety. *See e.g. Queens Coll. Special Projects Fund, Inc. v. Newman*, 154 A.D.3d 943, 943–44 (N.Y. App. Div. 2017); *Chase Manhattan Bank (Nat'l Ass'n) v. Broadway, Whitney Co.*, 294 N.Y.S.2d 416, 421–22 (Sup. Ct. 1968), *aff'd, Chase Manhattan Bank v. Broadway, Whitney Co.*, 24 N.Y.2d 927 (1969). Access cannot be delayed by an adjoining landowner in order to extract money. *2225 46th St., LLC. v. Hahralampopoulos*, 46 N.Y.S.3d 772, 776 (Sup. 2017); *N. 7-8 Inv'rs, LLC v. Newgarden*, 43 Misc. 3d 623, 625 (N.Y. Sup. 2014).

In this case, the ordinary nature of the access requested is confirmed in the License Agreement, which mandates that MM Proton "*shall* be permitted to use [defendants'] Premises" for the "Protection Measures" necessary to "provide exterior support … for the Building." License Agreement, §§1 and 2, Recital G. That protection was required to address defendants' claims that their building is "has shifted," is "leaning over several degrees," and is "extensively damaged," Toledo Decl. ¶¶ 9, 12. Similarly, the License Agreement requires that the work be done in compliance with the law, which according to the New York Department of Buildings ("DOB") requires an easement. License Agreement, §3; Supplemental Declaration of Robert Murphy ("Murphy Supp. Decl.") ¶ 7 and Ex. C.

### B.    MM Proton Has Shown Likelihood Of Success On The Merits

Defendants' Opposition does not dispute that the License Agreement grants MM Proton a license "to access and use" defendants' property, and indeed mandates that use, to perform the "Protection Measures." License Agreement, §§1 and 2 and recital G; Murphy Supp. Decl. ¶ 5. The defendants also do not dispute that, for many months, they have refused to permit the mandated access to their property, or to sign the easement

3

accompanying that access, until MM Proton pays them more money. Murphy Supp. Decl. ¶ 12.

Instead, defendants argue essentially that they can withhold permission to grant access because MM Proton has not fully remediated the costs of the damage to their building. Opp. Mem. at 1, 5. In defendants' words, "this dispute is purely about money," Opp. Mem. at 1, and MM Proton's refusal to meet their demands for more money.

### 1.    Defendants' Obligation To Permit Access Is Not Conditional

Defendants' argument on the merits rests on the incorrect presumption that MM Proton's reimbursement of all damages demanded by defendants is a condition precedent to their permitting MM Proton access to their building. There is no provision in the License Agreement imposing such a condition precedent, and the law does not impose one where it is not plainly stated. *See Kass v. Kass*, 235 A.D.2d 150, 159 (N.Y. App. Div. 1997), *aff'd*, 91 N.Y.2d 554 (1998). Moreover, defendants could not enforce such a condition precedent (even if one existed) while at the same time refusing to provide documentation to demonstrate that their claims fall within the damages contemplated by the License Agreement, as they have here. *See Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 348 (S.D.N.Y. 2013).

Instead of a condition precedent, the License Agreement provides that defendants and MM Proton have separate obligations. MM Proton has been performing its obligations – it has already paid defendants more than $500,000 under the License Agreement.[2] See Murphy Supp. Decl. ¶ 9. Thus, defendants must comply with their

---

[2]   Defendants complain that MM Proton has only paid $265,882 so far. Opp. Mem. at 11-12. The evidence of payments totaling more than $500,000 is in Murphy Supp. Decl. ¶ 9, Ex. D. The "1099 form" cited by defendants reflects only the payments made to and through one of defendants' attorneys.

separate obligation to permit access to their building, and sign an easement in connection with the joist tie work. *See Tyndall v. Tyndall*, 144 A.D.3d 1015, 1016–17 (N.Y. App. Div. 2016); *Friedman v. Burns*, 55 Misc. 3d 757, 765 (N.Y. Sup. Ct. 2017).

Defendants' separate obligation to provide access is particularly compelling because the joist tie work provides "Protection Measures" that will benefit their building. Defendants' own engineer has insisted that this work is necessary to protect what defendants' themselves claim has "shifted," is "leaning several degrees," and is "extensively damaged" as a result. Murphy Supp. Decl. ¶ 19-20 and Ex. R; Toledo Decl. ¶¶ 9, 12.  Having <u>mandated access</u> in the License Agreement so that MM Proton can perform the joist work necessary to ensure protection for a listing building, defendants cannot now <u>withhold that access</u> as a weapon to extract money for damages that are illegitimate or that have not been documented. *See Remodeling Constr. Servs. v. Minter*, 78 A.D.3d 1677, 1678 (N.Y. App. Div. 2010) (party breached contract by refusing to perform its obligations until wrongful claims for additional money were paid).

### 2.        Defendants Allegations Are Rebutted By Their Own Communications

Defendants argue that MM Proton has breached the License Agreement because it "did not substantively respond" to the written remediation proposals sent on September 28, 2017, and has made "low-ball offers." Opp. Mem. at 5-6.  Defendants' own emails show these claims are false: emails between MM Proton and defendants' advisors show that the remediation proposals for additional damages have been the subject of continuous discussion since September 2017. *See* Murphy Supp. Decl. ¶ 12 and Exs. F – O.  Thus, MM Proton is complying with its obligations regarding the remaining scope of remediation work. *See* License Agreement, §10.B (parties would "negotiate in good faith" to "put the Building in at least as good a condition as it was prior to the Project").

Moreover, rather than making "low-ball" offers, MM Proton has stated repeatedly since September 2017 that it will pay legitimate additional remediation costs (over the $500,000 already paid) when it receives back-up documentation showing a legitimate estimate of the costs of the repairs. Murphy Supp. Decl. ¶ 15. Moreover, the License Agreement contemplates repairs for damage caused by the construction, *see* License Agreement, §§10.A and B, but defendants' claims thus far have suggested that they are making claims for pre-existing damages to the building. Murphy Supp. Decl. ¶ 12 and Exs. F, G, K, and L.

MM Proton has prepared an itemized list of all the defendants' claimed damages, what has been paid, and what needs further support. It is prepared to pay immediately all legitimate damages on this itemized list upon receipt of back-up documents.

### 3.   Defendants Breached The License Agreement

Defendants argue that they did not breach the License Agreement because the parties "never reached an agreement" on the "price" for the joist work. Opp. Mem. at 7. This again is rebutted by the defendants' own communications, which show that defendants' engineer confirmed on December 12, 2017 that he was ready to proceed on joist work on the terms that MM Proton had agreed to.  Murphy Supp. Decl. ¶ 17 and Ex. L.  Defendants have refused to sign the contract as leverage to extract more money for the remediation of their alleged building damages. Murphy Declaration ("Murphy Decl.") ¶ 23.

Defendants further argue that they have no obligation to sign an easement agreement because there is no evidence that it was required by the DOB, and because it raises issues regarding defendants' property rights. The DOB has confirmed in writing that Yory's signature on the easement is required, Murphy Supp. Decl. ¶ 7 and Ex. C, and

6

section 3 of the License Agreement requires MM Proton to comply with DOB requirements. Moreover, rather than raising issues, the easement *settles* any property rights issues caused by defendants' building encroaching on MM Proton's property. Murphy Supp. Decl. ¶ 8.

### 4.   There Is No Need For Discovery Or Resolution Of Fact Disputes

Defendants also argue that there are factual disputes that require discovery and resolution.  Opp. Mem. at 3-4.  MM Proton disagrees.  The simple question presented on the merits is one of law: whether defendants can condition access to their building on full remediation of all their additional damage claims, even though there is no such condition in the License Agreement, and the joist tie access is required to protect their building. In any event, any relevant facts that are necessary for resolution of this motion are taken from public documents or defendants' own emails.

Even if there were some need for some discovery and resolution of factual disputes, that should occur on a very expedited basis. *See Digital Sin, Inc. v. Does 1-179*, No. 11 Civ. 8172 (PAE), 2012 WL 8282825, at *3 (S.D.N.Y. Feb. 1, 2012) (Courts apply a flexible standard of reasonableness and good cause in determining whether to grant a party's expedited discovery request); *N. Atl. Operating Co. v. Evergreen Distribs., LLC*, 293 F.R.D. 363, 368 (E.D.N.Y. 2013) (expedited discovery justified where Defendants' actions caused irreparable harm including loss of goodwill, negative effects on profitability and damage to its relationships with its clients).

### C.   MM Proton Has Shown Irreparable Harm

Defendants do not dispute that the proton therapy center for critical care cancer patients will be the only such facility serving New York State and will be pursuant to a Certificate of Need, and that delay will deny access to cancer patients seeking critical

care.  *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635 (2d Cir. 2002) (delayed access to a particular cancer treatment will cause irreparable harm to patients).

Nevertheless, defendants dismiss any consequence for cancer patients from the collapse of this project as "speculative." Opp. Mem. at 11-12. A press release issued by EDC and the accompanying declaration from the operator of the proton therapy center rebut this argument: they demonstrate in detail the number of patients who will be deprived of the proton center's services, the enormous benefits of the center's highly-specialized radiation therapy, and inability to obtain those benefits elsewhere in New York.  Murphy Decl. ¶¶ 3-5, Declaration of Michael Gutnick ("Gutnick Decl.") ¶ 4-7, and Ex. U.  The irreparable harm caused by the absence of this care is not speculative merely because the patients being denied treatment are not named or the exact alternative course of treatment is unknown. *See John E. Andrus Mem'l, Inc. v. Daines*, 600 F. Supp. 2d 563, 572–73 (S.D.N.Y. 2009) (harm to patients caused by closure of a nursing home was not speculative; the financial peril and loss of goodwill caused by potential closure also constituted irreparable harm); *W. Ala. Women's Ctr. v. Williamson*, 120 F. Supp. 3d 1296, 1317–19 (M.D. Ala. 2015) (decrease in access to care was not too speculative to constitute irreparable harm).

Similarly, defendants' Opposition ignores the economic benefits for the East Harlem community that will be lost if defendants' delays kill this project.  Murphy Decl. ¶ 6 and Ex. T.

Defendants also argue that there is no actual and imminent risk to public health and safety in the event the joist tie work is not performed promptly.  Opp. Mem. at 10-11. This argument is contradicted by their own engineer, who claimed that the joist tie work

is necessary because the CT building walls are "unsafe" according to the DOB definition of "dangerous buildings." Murphy Supp. Decl. 20 and Ex. R. Defendants' own declaration in this Court confirms that their building has "shifted," is "leaning several degrees," and is "extensively damaged" as a result, as does the License Agreement that provides for the joist tie work as "protective measures" for the building that is in this condition. Murphy Supp. Decl. ¶ 19 and Ex. A; Toledo Decl. ¶¶ 9, 12. Although defendants claim that *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) is distinguishable, because their building creates no imminent risk, Opp. Mem. at 11, the court in *Norfolk* issued an injunction *despite* the fact that the site had been used without causing harm.

In short, defendants' alarms about the condition of their building caused the DOB to require the joist tie "protective measures" be completed before issuing a Certificate of Occupancy. Murphy Decl. ¶¶ 13- 15 and Murphy Supp. Decl. ¶ 19. Defendants cannot now incongruously claim that the building is "unsafe," "extensively damaged" and "listing" several degrees but at the same time it is "stable." Toledo Decl. ¶ 12. There is an actual and imminent risk of irreparable harm.

The 2015 "existing conditions" survey cited by defendants (Opp. Mem. at 10) is not relevant: it only shows that damage to the interior and exterior of the building existed *prior to* construction.  It does not address whether joist ties were needed in 2016 to protect that building because of additional damage.  Murphy Supp. Decl. ¶ 21 and Ex. S.

Defendants further argue that there is no actual and imminent risk that MM Proton will lose control of its property to the EDC in July. Opp. Mem. at 9-10. Defendants suggest first that this risk does not exist because they were never told of this

deadline. But what they are told is irrelevant given that the plain language of the deed for MM Proton's property establishes the risk.  Murphy Supp. Decl. ¶ 22 and Ex. T.

Defendants further claim that mid-July is not a real deadline because MM Proton can always seek to cure any default under the terms of the deed. But that opportunity to cure is meaningless because, as defendants do not dispute, MM Proton will subject to delay costs of $3 million per month beginning in May that will cripple its ability to proceed with the Project.  Murphy Supp. Decl. ¶ 22.  Moreover, opportunities to cure have no weight because defendants have not indicated any willingness to agree to any timetable for resolution of these long-running disputes.  *Id*.

**D.     The Public Interest Will Be Served By An Injunction**

Defendants finally do not dispute that this Court "may go much further" to grant injunctive relief when that remedy is "in furtherance of the public interest." *Standard & Poor's Corp. v. Commodity Exchange, Inc.,* 683 F.2d 704, 711 (2d Cir. 1982). Nor do they dispute that that is the case here because an injunction will serve the public interest because the Project is designed to revitalize the East Harlem community, this Project will provide beneficial facilities for improved cancer treatments in New York. Gutnick Decl. at ¶¶ 4-6 and Ex. U.

Dated: January 31, 2018                     Respectfully submitted,

                                            WILMER CUTLER PICKERING HALE
                                            AND DORR LLP

                                            /s/ Charles C. Platt
                                            _____
                                            Charles C. Platt 2937
                                            7 World Trade Center
                                            New York, NY 10007
                                            Telephone: (212) 230-8800
                                            Fax: (212) 230-8888
                                            Email:  charles.platt@wilmerhale.com
                                            ***Attorney for plaintiff MM Proton I, LLC***